UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
KATHLEEN MCGUIRE-WELCH,

                                        Plaintiff,

        -v-                                             6:14-CV-0278
                                                        (DNH/ATB)
THE HOUSE OF THE GOOD SHEPHERD;
THE HOUSE OF THE GOOD SHEPHERD'S
TILTON SCHOOL; SHANNON PERRI in her
individual and official capacity; ZYGMUNT
MALOWICKI in her individual and official capacity;
JOHN DOE(S) and JANE DOE(S),

                                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
APPEARANCES:                            OF COUNSEL:

BOSMAN LAW FIRM, LLC                    A.J. BOSMAN, ESQ.
Attorneys for the Plaintiff             DANIEL W. FLYNN, ESQ.
201 West Court Street
Rome, New York 13440

HANCOCK, ESTABROOK LAW FIRM             JOHN T. MCCANN, ESQ.
Attorneys for the Defendants            ROBERT J. THORPE, ESQ.
1500 AXA Tower I
100 Madison Street, Suite 1500
Syracuse, New York 13202

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

        On February 12, 2014, plaintiff Kathleen McGuire-Welch ("plaintiff" or "McGuire-Welch")

filed this action against defendants The House of the Good Shepherd ("HGS"), The House of the

Good Shepherd's Tilton School (the "Tilton School"), Shannon Perri ("Perri"), and Zygmunt

Malowicki ("Malowicki", and collectively, the "defendants") alleging age discrimination in violation

of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 - 634 ("ADEA") and New York

State Human Rights Law, New York Executive Law § 296 ("NYSHRL") and retaliation claims

pursuant to Title V of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), the

Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* (the "RA") and the NYSHRL.  Plaintiff seeks

compensatory and punitive damages, and declaratory and injunctive relief.  Defendants have

filed an answer and the parties have completed extensive discovery.

Currently pending is defendants' motion for summary judgment.  The motion is fully

briefed and oral arguments were held on June 3, 2016 in Utica, New York.

## II.  **FACTUAL BACKGROUND**

The following facts, taken from the Complaint, the parties' statements pursuant to

Northern District of New York Local Civil Rule 7.1(a)(3) and other submitted evidence, are

undisputed unless otherwise indicated.  Consideration has been given to whether the parties

have proffered admissible evidence in support of their positions and the facts are viewed in the

light most favorable to the nonmoving plaintiff.

McGuire-Welch was hired by HGS in 1991 to serve as the Chairperson for the Committee

on Special Education ("CSE") at HGS's Tilton School, a position she held for the duration of her

time of employment with HGS.  See McGuire-Welch Affidavit, at ¶¶ 3, 4.  The Tilton School is

a New York State Education Department ("NYSED") certified program that provides educational

services to students ages 5 to 21 in connection with other services offered at HGS.  During the

relevant times, defendant Zygmunt Malowicki served as the Assistant Executive Director of the

Tilton School.  In her position, plaintiff oversaw the CSE process for students at the Tilton

School, including notifying parents of any change in a student's Individualized Education

Program ("IEP"), changes in such student's Behavioral Intervention Program ("BIP") and coordinating the special education materials with the local school district such student attends.

In July 2011, Perri was promoted to the position of Coordinator of Education Services and became McGuire-Welch's direct supervisor. Id. at ¶ 5. Plaintiff alleges that soon after Perri became her supervisor, Perri asked her when she planned on retiring. Id. at ¶ 6. Plaintiff also alleges that Perri began to criticize her work product and challenging the performance of plaintiff's duties. Id. at ¶ 7. Soon thereafter, Perri discontinued plaintiff's access to reports of student incidents, such as fights, that plaintiff states she was required to investigate and subsequently notify the appropriate school district of any conduct which could affect the student's IEP. Id. at ¶ 8. In February 2012, Perri completed a performance evaluation of plaintiff, noting deficiencies in plaintiff's performance, including that the quality of plaintiff's work needed improvement in its accuracy, that plaintiff needed to take more initiate in completing tasks and improve her planning and organizational skills. See Malowicki Affidavit, Ex. 1.

In March 2012, NYSED audited the Tilton School's compliance with NYSED regulations and found numerous instances of noncompliance. As a result, NYSED required the School to develop and implement a corrective action plan (the "Corrective Action Plan"), which defendants contend directly related to McGuire-Welch's responsibilities as CSE chairperson. In December 2012, there was an administrative meeting between representatives of HGS and NYSED to address HGS's outstanding noncompliance and the Corrective Action Plan. See Pl's Rule 7.1 Statement, at ¶ 10. Plaintiff did not attend any of the relevant meetings with NYSED nor did she participate in the development of the Corrective Action Plan. Id. at ¶ 14.

NYSED required that the Corrective Action Plan be completed by April 30, 2013. The HGS internal target date for completion of plan was March 15, 2013 and many employees,

including McGuire-Welch, were tasked with responsibilities concerning the plan.  Defendants contend that plaintiff was specifically tasked with ensuring that the School's files evidenced decisions regarding revisions to students' BIPs or IEPs and for sending copies of such documents, progress reports and meeting minutes to the students' parents or guardians and local school district.  Perri alleges that she frequently had to follow up with plaintiff regarding her responsibilities and was often frustrated with plaintiff's lackadaisical approach to NYSED's demands.  After NYSED's deadline had passed, Perri contends that plaintiff had failed to correct mistakes previously pointed out to her and that representatives of the School had to scramble to meet NYSED's requirements.  Plaintiff contends that she did not receive updated training to properly complete the tasks assigned to her until March 15, 2013 and suffered from her exclusion from relevant meetings and the failure of defendants to provide guidance or information regarding the Corrective Action Plan.  See McGuire-Welch Affidavit, at ¶ 17.  In June 2013, Perri completed the 2012-2013 performance evaluation of plaintiff, again noting numerous deficiencies in plaintiff's work performance.

Additionally in June 2013, a Tilton School student was placed in jail.  When the student was released, McGuire-Welch states that the student or his or her teacher approached plaintiff hoping to take a Regents examination the student was signed up for.  Plaintiff alleges that she informed Mary Palmer, a staff member identified as a team leader by plaintiff, that the student had the right to take the test.  However, she believes Perri prevented the student from taking the test.

McGuire-Welch was terminated from her position on June 21, 2013 and was over 60 years old at the time of her termination.  Plaintiff's position was filled by an individual who was 29 years old at the time of hiring.

## III. __DISCUSSION__

Defendants argue that they are entitled to summary judgment because there is no issue of material fact as to whether McGuire-Welch was properly discharged for legitimate, nondiscriminatory reasons relating to her job performance and that such discharge was wholly unrelated to plaintiff's age or any alleged protected activities undertaken by plaintiff.

A. _Summary Judgment Standard_.

Summary judgment is appropriate where, construing the evidence in the light most favorable to the non-moving party, "there is no genuine issue as to any material fact" and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); Richardson v. Selky, 5 F.3d 616, 621 (2d Cir. 1993). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." Bowen v. National R.R. Passenger Corp., 363 F. Supp. 2d 370, 373 (N.D.N.Y. 2005) (citing Rodriquez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [their] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" Id. (quoting First Nat'l Bank of Ariz. v. Cities Svcs.Co., 391 U.S. 253, 288 (1968)). Those specific facts must be supported by "citing to particular parts of materials in the record." FED. R. CIV. P. 56(c)(1)(A). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477

U.S. at 249-50 (citations omitted).  Affidavits submitted to defeat summary judgment must be admissible themselves or must contain evidence that will be presented in an admissible form at trial.  See H. Sand & Co. v. Airtemp Corp., 934 F.2d 450, 454–55 (2d Cir.1991) (stating that "hearsay testimony . . . that would not be admissible if testified to at the trial may not properly be set forth in [a Rule 56] affidavit.").

Although discrimination claims may involve questions of intent that are ill-suited to resolution at the summary judgment stage, the Second Circuit has gone "out of [its] way to remind district courts that the 'impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting McLee v. Chrysler Corp., 38 F. 3d 67, 68 (2d Cir. 1994)).  "[T]rial courts should not treat discrimination differently from other ultimate questions of fact."  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148 (2000).  Accordingly, "even in the discrimination context", a plaintiff must offer "more than conclusory allegations" to survive a motion for summary judgment.  Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 101 (2d Cir. 2010).

B. *Governing Statutes.*

McGuire-Welch alleges age discrimination in violation of the ADEA and NYSHRL and retaliation claims pursuant to Title V of the ADA, the Rehabilitation Act and NYSHRL.

The ADEA establishes that it is "unlawful for an employer ... to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges or employment, because of such individual's age." 29 U.S.C. § 623(a)(1); see also Fagan v. New York State Elec. & Ga Corp., 186 F.3d 127, 132 (2d Cir. 1999).  The NYSHRL makes it unlawful for an employer "to discriminate against [an] individual in promotion,

compensation or in terms, conditions, or privileges of employment, because of such individual's age." N.Y. Exec. Law § 296 (3–a)(a).

Courts use the triparite burden shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to analyze intentional discrimination claims under the ADEA and NYSHRL. See Ruiz v. County of Rockland, 609 F.3d 486, 491 (2d Cir. 2010); Gorzynski, 596 F.3d at 106. The plaintiff bears the initial burden of establishing, by a preponderance of the evidence, a prima facie case of discrimination. See Holcomb v. Iona College, 521 F.3d 130, 138 (2d Cir. 2008). To prevail on an ADEA claim, a plaintiff must show that "(1) [s]he was within the protected age group; (2) [s]he was qualified for the position; (3) [s]he was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003). The class entitled to the statutory protection of the ADEA is limited to persons 40 years of age or older. See 29 U.S.C. § 631(a).

If the plaintiff establishes a prima facie case, the burden of production shifts to the defendants to articulate a legitimate, non-discriminatory reason for the challenged adverse employment decision or action. See Luciano v. Olsten Corp., 110 F.3d 210, 215 (2d Cir. 1997). Once the defendant presents a legitimate, non-discriminatory reason, the burden returns to the plaintiff "to demonstrate that defendant's articulated reason for its decision is in fact a pretext for discrimination[.]" Id. Critically, although *McDonnell Douglas* shifts the burden of production back and forth between the parties, the ultimate burden of persuasion for a claim of intentional discrimination is always on the plaintiff. See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981) ("[The] ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against plaintiff remains at all times with plaintiff.").

In the summary judgment context, this means plaintiff must "establish a genuine issue of material fact either through direct, statistical, or circumstantial evidence as to whether the employer's reason for discharging her is false . . ." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1225 (2d Cir. 1994). "[U]nder the plain language of the ADEA, an employee bringing a disparate treatment claim must prove by a preponderance of the evidence that age was the 'but-for' cause behind the employer's adverse decision, and not merely one of the motivating factors." Hrisinko v. N.Y.C. Dep't of Educ., 2010 WL 826879, at *1 (2d Cir. Mar. 11, 2010).

The ADA makes it unlawful for an employer to "discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). The RA and NYHRL contain similar provisions against retaliation and are governed in this respect by the same standards as the ADA. See 29 U.S.C. § 794(d); N.Y. Exec. Law § 296(7); Weixel v. Board of Educ. of the City of New York, 287 F.3d 138, 148–49 (2d Cir. 2002) (elements of a retaliation claim under RA are same as the ADA); Weissman v. Dawn Joy Fashions, Inc., 214 F.3d 224, 234 (2d Cir. 2000) (applying ADA analysis to plaintiff's retaliation claim under both ADA and NYHRL).

Claims for retaliation are analyzed under the same burden-shifting framework established under *McDonnell Douglas*. See Weixel, 287 F.3d at 148; Lovejoy–Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 223 (2d Cir. 2001). In order to establish a prima facie case of retaliation, a plaintiff must show that: (1) she engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against

her; and (4) a causal connection exists between the alleged adverse action and the protected activity.  See Cifra v. G.E. Co., 252 F.3d 205, 216 (2d Cir. 2001).

C. *Plaintiff's Age Discrimination Claim*.

The parties do not dispute that McGuire-Welch is a member of a protected class or that she suffered an adverse employment action by being terminated from her employment.  The dispute instead focuses on whether she was qualified for a position and if the circumstances surrounding her termination give rise to an inference of discrimination.  Defendants argues that even assuming plaintiff can establish a prima facie case, she was terminated for a legitimate, nondiscriminatory reason; to wit, her failure to successfully complete tasks in a timely fashion.

*(i) Prima Facie Case*.

"[P]laintiff's burden in establishing a prima facie case of unlawful termination under the *McDonnell Douglas* framework is *de minimis*[.]"  Levitant v. Hilt N.Y. Waldorf LLC, 2012 WL 414515, at *4 (S.D.N.Y. Feb. 6, 2012).  When the adverse action in question is the termination of a current employee with several years of experience, the qualification requirement is "not difficult" to meet.  Slattery v. Swiss Reinsurance America Corp., 248 F.3d 87, 92 (2d Cir. 2001) (an employee of seven years need only show "minimal qualification" for the job); see also Miller v. National Ass'n of Securities Dealers, Inc., 703 F. Supp. 2d 230, 244 (E.D.N.Y. 2010) (plaintiff's nearly two decades of working for defendant evidenced a prima facie case of qualification).   As McGuire-Welch held the position of CSE chairperson for twenty two (22) years prior to her termination, plaintiff has made a prima facie case of qualification.

To support her contention that the circumstances of her termination give rise to inference of age discrimination, plaintiff notes that she was replaced by a twenty nine (29) year

old employee.  Further, plaintiff alleges that Perri inquired into when plaintiff might be retiring without provocation, giving rise to an inference of age discrimination.

Where "an employer has acted with discriminatory intent, direct evidence of that intent will only rarely be available ... affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." Holcomb, 521 F.3d at 137. Circumstances contributing to an inference of age-based employment discrimination may include: invidious comments about people in the protected age class; more favorable treatment of younger employees; criticism of an employee's work performance in age-related degrading terms; a sequence of events leading to an employee's termination; or the timing of the termination. See generally Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994) (collecting cases).  Further, the Second Circuit has continuously held that an inference of discrimination arises, for purposes of ADEA defendants' summary judgment motions, when an older qualified employee is replaced by someone younger. See D'Cunha v. Genovese/Eckerd Corp., 479 F.3d 193, 195 (2d Cir. 2007) (an age difference of eight years raises an inference of discrimination); Gorzynski, 596 F.3d at 107; Francis v. Elmford Sch. Dist., 2008 WL 345489, at *2 (2d Cir. Feb. 8, 2008).

Considering the facts in the light most favorable to plaintiff, taken as a whole rather than individually, and mindful that the Second Circuit has "characterized the evidence necessary to satisfy this [prima facie] burden as minimal and de minimis", Zimmermann v. Assocs. First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001), plaintiff has adequately shown that the circumstances surrounding her termination give rise to an inference of age discrimination, and accordingly, that she has established a prima facie case of age discrimination for *McDonnell Douglas* purposes.

(ii) *Legitimate, Non-discriminatory Reason*.

Under *McDonnell Douglas*, the burden of production now shifts to defendant to articulate some legitimate, nondiscriminatory reason for its adverse employment action against plaintiff.  See Burdine, 450 U.S. at 254.  As with plaintiff's prima facie case, defendant's "burden is one of production, not persuasion, and the Court's analysis at this stage can involve no credibility assessment of the evidence."  Cretella v. Liriano, 633 F. Supp. 2d 54, 72 (S.D.N.Y. 2009) (citation omitted).   Accordingly, at this point, defendant need only present a clear explanation for plaintiff's termination, not prove that the proffered explanation was the actual reason for its decision.  See Gibbs v. Consol. Edison Co. of N.Y., Inc., 714 F. Supp. 85, 89 (S.D.N.Y.1989).

Defendants assert that McGuire-Welch was terminated as a result of her poor performance, i.e. her failure to successfully complete tasks in a timely fashion relative to the NYSED audit and the Corrective Action Plan and to improve those deficient areas noted in her 2010-2011 and 2011-2012 performance evaluations.

Reviewing the supporting affidavits and exhibits, defendants have met their burden of offering a legitimate, non-discriminatory reason for their adverse action against McGuire-Welch. Plaintiff's 2011-2012 Performance Evaluation, dated January 28, 2011 and prepared by Perri's predecessor David Williams, does note numerous deficiencies in plaintiff's work product, including a need to improve the accuracy of her work, follow the chain of command on a more consistent basis, improve her planning abilities and communicate to people more efficiently.  See Malowicki Affidavit, Ex. 2.  Similar deficiencies were are noted in Perri's 2011-2012 and 2012-2013 evaluations completed by Perri.   Both the affidavits of Perri and Malowicki sufficiently document plaintiff's lack of improvement over time and the deficiencies in plaintiff's job

performance as it concerned the NYSED audit and the Corrective Action Plan.  Clearly such performance shortcomings would constitute a legitimate nondiscriminatory reason for plaintiff's termination.  Therefore, defendants have carried their burden under McDonnell Douglas.

        *(iii) Pretext for Discrimination*.

        Following defendant's presentation of a legitimate, nondiscriminatory reason for plaintiff's termination, the shifted burden of production becomes irrelevant, and the presumption raised by the prima facie case drops from the case.  See Burdine, 450 U.S. at 255.  Plaintiff may still prevail if she can show that defendants' decision to terminate her was, in fact, the result of age discrimination.  Thus, the Court must now determine whether plaintiff "has raised sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence that her age was a 'but for' cause of [defendants'] decision to fire her.  Gorzynski, 596 F.3d at 107. "In this respect, it is important to consider whether the explanations that [defendant] gave for [plaintiff's] firing were pretextual."  Id.; see also Holowecki v. Federal Exp. Corp., 2010 WL 2573864, at *1 (2d Cir. June 24, 2010) ("In order to satisfy their burden at the final stage, plaintiffs must offer evidence that age discrimination was the 'but-for' cause of the challenged actions."); Alam v. HSBC USA, N.A., 2009 WL 3096293, at *8 (S.D.N.Y. Sept. 28, 2009) ("[U]nder the ADEA, the discrimination must have been a 'but-for' cause of the employer's decision").

        Pretext "may be demonstrated either by the presentation of additional evidence showing that the employer's proffered explanation is unworthy of credence, or by reliance on the evidence comprising the prima facie case, without more."  Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent, 198 F.3d 68, 72 (2d Cir.1999).  A "fact-finder need not, and indeed should not, evaluate whether a defendant's stated purpose is unwise or

unreasonable," but should instead "determin[e] whether the articulated purpose is the actual purpose for the challenged employment-related action." <u>DeMarco v. Holy Cross High Sch.</u>, 4 F.3d 166, 170–71 (2d Cir. 1993). "The pretext inquiry thus normally focuses upon factual questions such as whether the asserted reason for the challenged action comports with the defendant's policies and rules, whether the rule applied to the plaintiff has been applied uniformly, and whether the putative non-discriminatory purpose was stated only after the allegation of discrimination." <u>Id</u>. at 171.

In support of her claim, McGuire-Welch points to several allegations which she believes evidence the defendants' proffered non-discriminatory reasons are simply a pretext for discrimination.  These include that: (a) defendants' reason for terminating has allegedly shifted from plaintiff's sustained poor performance to her specific work concerning the Corrective Action Plan, (b) defendants' deviated from their own policy in delaying plaintiff's performance evaluation until June 2013 and engaging in progressive discipline against plaintiff, (c)  plaintiff was excluded from meetings and discussions of the Corrective Action Plan and did not receive timely training to complete tasks assigned to her, (d) defendants filled plaintiff's position with an individual under the age of 40 with minimal experience, (e) plaintiff claims she only received positive evaluations prior to Perri becoming her supervisor, (f) it was common knowledge that Perri had a list of older individuals who she planned to terminate and (g)  in 2011, Perri asked plaintiff how much time she had remaining before she could retire.

The Second Circuit has held that "the court should not consider the record solely in piecemeal fashion, giving credence to innocent explanations for the individual strands of evidence[.]" <u>Howley v. Town of Stratford</u>, 217 F.3d 141, 151 (2d Cir. 2000).

(a) *Change in Termination Reasoning*.

McGuire-Welch contends that the non-discriminatory reason provided by defendants for her termination has shifted throughout this litigation, from her allegedly general poor job performance to her failure to timely complete tasks associated with the Corrective Action Plan, and as a result, pretext can be inferred.

The Second Circuit has held that "[i]nconsistent or even post-hoc explanations for a termination decision may suggest discriminatory motive." Weiss v. JPMorgan Chase & Co., 332 Fed. Appx. 659, 663 (2d Cir. 2009).  However, review of the documentary evidence does not show that defendants' reason for terminating shifted or was inconsistent.  The Termination Form completed for McGuire-Welch indicated that she was terminated as a result of "poor job performance".  See McGuire-Welch Affirmation, Ex. 1, at 99.  While defendants concede that the primary reason for plaintiff's termination was her failure to successfully complete tasks related to the Corrective Action Plan, a failure which they believed would have jeopardized the School's educational certification, such action was the culmination or "final straw" of defendants' documented concerns relating to plaintiff's job performance contained in both her 2010-2011 and 2011-2012 performance evaluations.  As a result, the termination reason did not shift and  was not otherwise inconsistent to support a conclusion that the termination reason was a pretext for discrimination.

(b) *Deviations from Employer Policy*.

Next, McGuire-Welch argues that pretext can be inferred from the fact that defendants delayed her annual performance evaluation until June 2013 and failed to engage in progressive discipline.  "'[A] defendant's deviation from procedural regularity . . . can raise a question as to the good faith of the process where the deviation may reasonably affect the decision.'" Edwards

v. Jericho Union Free Sch. Dist., 55 F. Supp. 3d 458, 466 (E.D.N.Y. 2014) (quoting Weinstock,

224 F.3d at 45).

Defendants have submitted the Employer-Employee Relationship policy, which

provides that appropriate discipline is to be based upon the severity of the offense.  See

Malowicki Reply Affidavit, Ex. 1.  Given defendants' belief that plaintiff's performance deficiencies

might have lead to the loss of their state certification, termination certainly might have been

appropriate.  Further, plaintiff was expressly informed of the deficiencies in her work product in

both the 2010-2011 and 2011-12 performance evaluations, including the assessments of Mr.

Williams, Ms. Perri's predecessor, that she needed to be "better prepared", "check the accuracy

of her work" and that she struggles to communicate her knowledge in a way that is useful and

comprehensive.  See Bosman Affirmation, Ex. 1.  Such notice evidences that defendants did

engage in a progressive process of informing plaintiff of her deficiencies and giving her an

opportunity to improve.  Similarly, the fact that plaintiff did not receive her annual performance

evaluation until June 2013 does not evidence that defendants' stated reason for termination was

a pretext for discrimination.

*(c) Exclusion from NYSED Meetings.*

McGuire-Welch asserts that her exclusion from a December 18, 2012 meeting with

NYSED and the purposeful denial of information and training concerning the Corrective Action

Plan evidences that defendant's reason for termination was a pretext for discrimination.

The Corrective Action Plan itself tasks McGuire-Welch with numerous responsibilities,

largely clerical in nature, including submitting timely IEP referrals to local school districts,

ensuring that BIP progress reports are complete and sent to parents or guardians, ensuring that

minutes are taken to reflect decisions regarding revisions of a BIP or IEP and such minutes are

sent to parents or guardians.  See Malowicki Affidavit, Ex. 3.  Defendants have further submitted emails indicating that on January 25, 2013, a meeting was held with plaintiff and other employees of the Tilton School that were responsible for tasks pursuant to the Corrective Action Plan to discuss outstanding items and ensure timely completion.  See Malowicki Affidavit, Ex. 4.  Plaintiff has failed to articulate what information or training was withheld that would be required to successfully complete her tasks under the Corrective Action Plan and has failed to demonstrate how her absence from the December 2012 meeting evidences discriminatory animus on the part of defendants.

The relevant inquiry is not whether the performance-based justification for plaintiff's termination articulated by defendant is accurate or fair, but whether plaintiff can show any evidence that it was not the actual justification.  See DeMarco v. Holy Cross High School, 4 F.3d at 170–71.  In short, "[t]his Court does not sit as a super-personnel department that reexamines an entity's business decisions."  Scaria v. Rubin, 117 F.3d 652, 654 (2d Cir.1997).

(d) Replacement by Younger Employee.

McGuire-Welch points to the fact that she was replaced by a 29 year old with minimal experience to support her pretext argument.  However, "the mere fact that plaintiff's replacement was younger, though enough to establish the inference of discrimination prong of plaintiff's prima facie case, cannot standing alone establish pretext."  Mattera v. JPMorgan Chase Corp., 740 F. Supp. 2d 561, 574 (S.D.N.Y. 2010).

(e) Prior Evaluations.

McGuire-Welch argues that her annual evaluations prior to Perri becoming her supervisor were generally positive in order to refute defendant's explanation of her termination as performance-based.  The mere fact that an employee received positive performance

evaluations and subsequently received negative evaluations is insufficient to establish that the latter were pretextual.  See Orisek v. Am. Inst. of Aeronautics and Astronautics, 938 F. Supp. 185, 188 (S.D.N.Y.1996).  Indeed, "[d]emonstration of past positive performance is insufficient to raise a genuine issue of disputed fact with respect to pretext."  Iverson v. Verizon Comm., 2009 WL 3334796, at *5 (S.D.N.Y. Oct. 13, 2009).  Further, as discussed above, while the 2011-2012 Performance Evaluation completed by David Williams was in some ways more positive than later evaluations completed by Perri, it noted many of the same deficiencies cited by Perri.

(f) <u>List of Older Employees</u>.

McGuire-Welch's statements that Perri had a list of older individuals who she planned to terminate is conclusory and unsubstantiated by any specific facts in the record.  When an employer accused of discrimination provides convincing evidence explaining its conduct, and the plaintiff's case rests on conclusory allegations such as these, it is proper for a court to conclude that there is no genuine issue of material fact and to grant summary judgment for the employer. See Meloff v. New York Life Ins. Co., 51 F.3d 372, 375 (2d Cir. 1995); Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995); Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 203 (2d Cir. 1995).

(g) <u>Question Concerning Plaintiff's Retirement</u>.

McGuire-Welch lastly contends that shortly after Perri became her supervisor in 2011, Perri asked plaintiff when she planned on retiring.

The Second Circuit has identified four non-dispositive factors appropriately considered in deciding what weight to accord isolated remarks suggestive of discriminatory bias: "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark

(i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." Henry v. Wyeth Pharmaceuticals, 616 F.3d 134, 149 (2d Cir. 2010).

"[E]ven if plaintiff was asked about h[er] retirement plans, inquiries about retirement plans do[ ] not necessarily show animosity towards age." Getler v. Cornell Weill Univ. Med. Coll. Dep't of Surgery, 2007 WL 38276, at *11 (S.D.N.Y. Jan. 3, 2007).  Rather, such stray remarks are routinely dismissed unless accompanied by further indicia of age-related animus.  See Fried v. LVI Servs., Inc., 500 F. App'x 39, 41 (2d Cir. 2012); Seabrook v. New York City Health and Hosp. Corp., 2015 WL 273652, at *9 (S.D.N.Y. Jan. 20, 2015).

The question posed to McGuire-Welch concerned her retirement and came from Perri, plaintiff's direct supervisor.  Such circumstances indicate that the statement could bear some weight in demonstrating discriminatory bias.  However, the question was remote in time in relation to plaintiff's termination as it was made almost two years prior to plaintiff's termination and did not directly relate to any decision-making process or employment decision.

McGuire- Welch's burden at the third step of the *McDonnell Douglas* analysis requires her to show more than possible age bias; she is required to adduce sufficient evidence to permit a reasonable jury to find that "but for" defendants' age bias, she would not have been terminated. See Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177–78 (2009).  The remark cannot bear that weight when considered against the documentary evidence supporting defendants' articulated non-discriminatory reason for terminating plaintiff.  The same conclusion obtains even when the totality of the evidence that plaintiff points to as evidence of defendants' age bias is considered. On this record, no reasonable juror could find that defendants' nondiscriminatory reason for terminating plaintiff was a pretext for age discrimination and that "but for" plaintiff's alleged

discriminatory actions, she would not have been terminated.  Thus, there are no genuine issues of material fact concerning plaintiff's age discrimination claims.  Therefore, defendants' motion for summary judgment will be granted with respect to such claims.   *D.  Retaliation Claims.*

McGuire-Welch claims that her termination constituted a retaliatory act for her advocacy on behalf of disabled students, in violation of the ADA, the RA and the NYSHRL.  Defendants contend that plaintiff's actions or alleged advocacy does not constitute protected activity.

Retaliation claims are analyzed pursuant to the Title VII principles.  See Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010).  Thus, courts evaluate all such claims under the burden shifting framework set forth in *McDonell Douglas* as discussed above.  See Patane v. Clark, 508 F.3d 106, 115-17 (2d Cir. 2007).  To establish a prima face case of retaliation, a plaintiff must demonstrate:  "(1) participation in a protected activity; (2) that the defendant  knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action."  Wright v. City of Syracuse, 2015 WL 1727169, at *2 (2d Cir. April 16, 2015).

"A 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination."  Wilmes v. Health, 2005 WL 2107032, at *1 (2d Cir. Aug. 31, 2005).  Protected activities encompass "making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges."  Sumner v. United States Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990).  A plaintiff "need not establish that the conduct she opposed was in fact a violation of [the law]," Bush v. Fordham Univ., 452 F. Supp. 2d 394, 416 (S.D.N.Y. 2006), but she must demonstrate a "good faith, reasonable belief that the underlying challenged actions of the

employer violated the law." Id. "The onus is on the speaker to clarify to the employer that [s]he is complaining of unfair treatment due to membership in a protected class and that [s]he is not complaining merely of unfair treatment generally." Early v. Wyeth Pharmaceuticals, Inc., 603 F. Supp. 2d 556, 576 (S.D.N.Y. 2009). The reasonableness of a plaintiff's belief is to be assessed in light of the totality of the circumstances. See Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1178 (2d Cir. 1996).

A plaintiff may establish a causal connection between the protected activity and the adverse employment action "either (1) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant; or (2) indirectly, by showing that the protected activity was followed closely by discriminatory treatment." Schanfield v. Sojitz Corp. of America, 663 F. Supp. 2d 305, 343 (S.D.N.Y. 2009) (citing Knight v. City of New York, 303 F. Supp. 2d 485, 496 (S.D.N.Y. 2004)).  In order for a court to "accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case," the temporal proximity must be "very close". Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001).

McGuire-Welch argues that she was retaliated against as a result of her advocacy of the disabled students at the Tilton School.  This included her opposition to Perri failing to notify school districts of truant students and to investigate incidents such as fights and notify the appropriate school districts.  Plaintiff asserts that her protected activity consisted of continuing to notify the relevant school districts when she became aware of these incidents.  Lastly, plaintiff contends that she advocated on behalf of a student in June 2013 to be permitted to take the Regents examination even though Perri did not ultimately permit the student to do so.

However, McGuire-Welch does not articulate to whom she complained about such alleged unlawful conduct or that defendants knew of plaintiff's complaints prior to her termination. In her affidavit, plaintiff alleges that Perri failed to notify Utica City School District of two incidents involving their students. However, plaintiff does not state what action she personally took with respect to the incidents and does not allege that Perri was aware of plaintiff's activity with the school district, if any in fact occurred. As a result, such contention cannot raise a genuine issue of material fact to defeat a summary judgment motion.

McGuire-Welch alleges a similar incident concerning the Rome City School, whereby she was allegedly reprimanded for inviting a representative from the school district to attend a meeting concerning one of its students. However, the emails submitted by plaintiff evidence that Perri wished to have an internal meeting prior to presenting the School's plan concerning the student to the school district and was concerned about the lack of communication by plaintiff. Nothing in the interaction would lead Perri to conclude that plaintiff was engaging in protected activity or complaining about Perri's alleged discriminatory practice. Regardless, as such incident occurred in January 2013, the temporal distance between activity and adverse action cannot support a finding of a casual connection.

Lastly, with respect to the June 2013 incident concerning a student seeking to take a regents examination, plaintiff only indicates that she verbally informed a Mary Palmer, apparently a team leader at the School, of her belief that the student had a right to take the test. There is no admissible evidence that Perri was informed of plaintiff's belief or position.

As a result, there are no genuine issues of material fact concerning plaintiff's retaliation claims. Therefore, defendants' motion for summary judgment will be granted with respect to these claims.

- 21 -

E. *Liability of Individual Defendants*.

Lastly, defendants argue that individual defendants may not be held personally liable for alleged violations of the ADEA, the ADA or the RA.  As such, defendants assert that claims against Perri or Malowicki in their individual and official capacities should be dismissed.

Although the age discrimination and retaliation claims against Perri and Malowicki will be dismissed, the Court notes that they may not be held personally liable for violations of the ADEA, the ADA or the RA.  Further, plaintiff has failed to raise a genuine issue of material fact concerning whether Perri or Malowicki consists an "aider and abettor" pursuant to the NYSHRL.

## IV.  CONCLUSION

The manner in which McGuire-Welch was terminated by defendants was certainly handled very poorly.  Defendants inadvertently sent plaintiff's performance evaluation to her on June 18, 2013.  On June 21, 2013, at what was purported to be a performance review, plaintiff was summarily informed that she was terminated effective immediately and escorted out of the building.  McGuire-Welch, a loyal employee of the Tilton School for over twenty three years, deserved better.  If the termination had been conducted with an appropriate degree of compassion and understanding, this action may never have been instituted.  However, "obnoxious bosses and difficult times at work do not, as a matter of law, constitute employment discrimination."  Mattera, 740 F. Supp. 2d at 576.

Defendants have presented admissible evidence of a legitimate, non-discriminatory reason for terminating plaintiff.  Given the totality of the evidence, McGuire- Welch has failed to provide sufficient evidence to permit a reasonable jury to find that "but for" defendants' age bias, she would not have been terminated.  Therefore, there are no genuine issues of material fact which would preclude the granting of defendants' motion for summary judgment concerning plaintiff's age discrimination claims.  Further, given plaintiff's failure to provide sufficient

admissible evidence concerning her protected activity and defendants' knowledge of such activity, summary judgment will be granted concerning plaintiff's retaliation claims.

Therefore, it is ORDERED that:

(1) defendants' motion for summary judgment (ECF No. 42) is **GRANTED**; and

(2) the complaint is **DISMISSED**.

The Clerk of the Court shall enter judgment and close this case.

IT IS SO ORDERED.

_____
United States District Judge

Dated: November 4, 2016
      Utica, New York